1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL Petitioner
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED:   5/29/09

DEPUTY CLERK



FILED
CLERK, U.S.D.C. SOUTHERN DIVISION

MAY 29 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                                      DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JOHN GZIKOWSKI,                    )     NO. ED CV 08-01189 RGK (RNB)
                                   )
                 Petitioner,       )
                                   )
        vs.                        )     **ORDER REJECTING REPORT AND**
                                   )     **RECOMMENDATION OF UNITED**
DEBRA DEXTER, Warden,              )     **STATES MAGISTRATE JUDGE**
                                   )
                 Respondent.       )
                                   )

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, all of the records herein, and the Report and Recommendation of United States Magistrate Judge (DE 21). The Court **REJECTS** the Magistrate Judge's Report and Recommendation and **DENIES** the habeas petition.

## I.    PROCEEDINGS

John Gzikowski ("Petitioner" or "Gzikowski") filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") on July 30, 2008 in the United States District Court for the Northern District of California. The Petition challenges a January 3, 2007 decision by a panel of the California Board of Prison Terms, now a part of the California Board of Parole Hearings,

1   ("Board") deeming Petitioner unsuitable for parole. On August 22, 2008, this action was

2   transferred to the United States District Court for the Central District of California based on

3   Petitioner's incarceration in Ironwood State Prison, which is located within the jurisdictional

4   boundaries of the Central District.

5

6   Specifically, Petitioner contends that the Board's continued reliance on the commitment

7   offense in denying him parole violates due process.[1] Petitioner also contends that the Board's

8   alleged bias against granting parol to life-sentenced prisoners violates due process.[2] After

9   Magistrate Block denied Respondent's Motion to Dismiss, Respondent filed its Answer on

10  December 10, 2008. Petitioner filed a Reply on December 23, 2008. Magistrate Block issued his

11  Report and Recommendation, which recommended granting the habeas petition, on March 2,

12  2009. Respondent filed an Objection to the Report and Recommendation on March 26, 2009.

13

14  **II.   BACKGROUND**

15

16  On April 20, 1978, at approximately 1:30 a.m., Raul Villasenor ("Villasenor") was

17  driving his white pickup truck on the streets of San Francisco. (Lodgment No. 1, 1-3-07

18  Transcript 19-20; Lodgment No. 2, 3.) Gzikowski was a passenger in that truck. *Id.* As the truck

19  turned right from Seventh Street onto Market Street, it pulled alongside a Cadillac parked on

20  Market Street. *Id.* As Gzikowski and Villasenor stopped the truck next to the Cadillac,

21  Gzikowski pointed a shotgun towards the Cadillac and fired three shots at Raymond Velonza

22  ("Velonza") and Gary Orais ("Orais"), who were sitting in the Cadillac. *Id.* Both Velonza and

23  ───────────────

24  [1] As Magistrate Block stated in his Report and Recommendation, Petitioner's contention
    that the use of chains, handcuffs, and leg shackles on him at his 2007 parole suitability hearing
25  violated a "standing order of the Superior Court" is not cognizable in this Court because the
    alleged violation of an order of a state superior court does not raise a federal question. *See* 28
26  U.S.C. §2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct.  475, 116 L. Ed. 2d 385
    (1991); *Smith v. Phillips*, 455 U.S. 209, 221, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).
27

28  [2] Petitioner withdrew his third asserted grounds for relief.

2

1   Orais were shot in the head and died instantly. *Id.*

2

3        After the shooting, Villasenor accelerated the car and turned right on Market Street onto

4   Sixth Street. (Lodgment No. 1, 1-3-07 Transcript 20; Lodgment No. 2, 3.) Nearby, a police

5   officer who had heard the shots drove down Market Street in pursuit of Villasenor and

6   Gzikowski. *Id.* Two patrol cars followed them into a parking lot a few blocks from the shooting

7   and ordered Gzikowski out of the car. *Id.* The officers arrested Gzikowski. *Id.* During a search of

8   the pickup truck, officers found a shotgun and a loaded .38 caliber revolver. *Id.*

9

10       Gzikowski later explained that he killed Velonza and Orais because they had been

11  disrespectful to him during an early confrontation and Gzikowski had been unable to control

12  himself. (Lodgment No. 1, 1-3-07 Transcript 19-22; Lodgment No. 2, 9-10.)

13

14       In 1978, Petitioner was sentenced to death for two counts of first degree murder with the

15  use of a firearm for the murders of Velonza and Orais. *People v. Gzikowski*, 32 Cal.3d 580, 582-

16  83, 186 Cal. Rptr. 339, 651 P.2d 1145 (1982). In 1982, the California Supreme Court overturned

17  Petitioner's conviction and the case was remanded for a new trial. *Id.* at 589. On remand,

18  Petitioner pled guilty to two counts of first degree murder and the trial court sentenced Petitioner

19  to two concurrent terms of seven years to life in state prison. (Pet. 2; Lodgment No. 1, 1-3-07

20  Transcript 1-2, 12.)

21

22       After eight prior parole hearings, on January 3, 2007, Gzikowski appeared before the

23  Board for his ninth parole hearing.[3] (Lodgment No. 2, 2.) At the conclusion of the hearing, the

24  Board found that Gzikowski "would pose an unreasonable risk of danger to society or a threat to

25  public safety if released from prison" and was unsuitable for parole. (Lodgment No. 1, 1-3-07

26  _____

27       [3] In September 2004, the Board granted Petitioner parole, but after the full Board
    reviewed a confidential file, it reversed the earlier decision and denied Petitioner parole.
28  (Lodgment No. 2, 2.)

1    Transcript 52.)

2

3    The Board based its decision on (1) the nature of the commitment offense, which the

4    Board felt demonstrated that Petitioner "had no regard for human life," (2) the triviality of the

5    motive in relation to the offense, (3) Gzikowski's prior criminal record and "failure to profit from

6    society's previous attempts to correct his criminality,"[4] (4) Gzikowski's failure to program

7    recently, and (5) Gzikowski's lack of parole plans. (Lodgment No. 1, 1-3-07 Transcript 52-53.)

8    The Board also noted that Gzikowski came in with "a real bad attitude" that "demonstrates [the]

9    kind of a propensity that could lead to violence . . ." and recommended that when he comes into

10   the hearings, he put his "best foot forward." *Id.* at 54-55. The Board, however, noted that

11   Gzikowski has "programmed fairly well," has two vocations, and has taken some college

12   courses. *Id.* at 53. The Board also recommended that Gzikowski remain disciplinary-free and

13   participate in available programs, and continue to earn positive "chronos."[5] *Id.* at 55.

14

15   Petitioner filed a habeas corpus petition in the San Francisco County Superior Court,

16   which that court denied in a written decision dated January 11, 2008. (Lodgment No. 2.)

17   Petitioner filed a habeas corpus petition in the California Court of Appeal, which was denied on

18   April 11, 2008 and in the California Supreme Court, which was denied on June 18, 2008.

19   (Lodgment Nos. 3-6.)

20

21

22

23   _____

24   [4] In 1971, Petitioner pled guilty to two counts of selling controlled substances (heroin and
     LSD) and was sentenced to one and a half to three hears in Illinois State Prison. (Lodgment No.
25   1, 1-3-07 Transcript 30.) Petitioner's other prior offenses included reckless driving in 1975,
     vandalism in 1977, and driving with a suspended license in Nevada and California in 1977. *Id.*
26

27   [5] The California Department of Corrections and Rehabilitation uses "chronos" on Form
     128-B to document information concerning inmates and inmate behavior. *See* Cal. Code Regs.,
28   tit. 15, § 3000.

4

1

2    **III.    <u>STANDARD OF REVIEW</u>**

3

4         A federal court may not grant an application for writ of habeas corpus on behalf of a

5    person in state custody with respect to any claim that was adjudicated on the merits in state court

6    proceedings unless the adjudication of the claim (1) "resulted in a decision that was contrary to,

7    or involved an unreasonable application of, clearly established federal law, as determined by the

8    Supreme Court of the United States," (2) or "resulted in a decision that was based on an

9    unreasonable determination of the facts in light of the evidence presented in the State court

10   proceeding." 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 24-26 (2002); *Early v.*

11   *Packer*, 537 U.S. 3, 8 (2002); *Williams v. Taylor*, 529 U.S. 362, 405-09 (2000).

12

13        "Clearly established federal law" refers to the governing legal principle or principles set

14   forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade*,

15   538 U.S. 63 (2003). A state court's decision is "contrary to" clearly established federal law if (1)

16   it applies a rule that contradicts governing Supreme Court law, or (2) it "confronts a set of facts .

17   . . materially indistinguishable" from a decision of the Supreme Court but reaches a different

18   result. *See Early v. Packer*, 537 U.S. at 8 (citation omitted); *Williams v. Taylor*, 529 U.S. at 405-

19   06.

20

21        Under the "unreasonable application prong" of Section 2254(d)(1), a federal court may

22   grant habeas relief "based on the application of a governing legal principle to a set of facts

23   different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538

24   U.S. at 76 (citation omitted); *see also Woodford v. Visciotti*, 537 U.S. at 24-26. A state court's

25   decision "involves an unreasonable application of [Supreme Court] precedent if the state court

26   either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

27   where it should not apply, or unreasonably refuses to extend that principle to a new context

28   where it should apply." *Williams v. Taylor*, 529 U.S. at 407 (citation omitted).

5

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (citation omitted). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citation omitted); *see also Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003), *cert. denied*, 540 U.S. 968 (2003). In applying these standards, this Court looks to the last reasoned state court decision, here the decision of the San Francisco County Superior Court. *See Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008).

## IV.   **DISCUSSION**

For the reasons discussed below, the Court **DENIES** the Petition for Writ of Habeas Corpus.

### A.   **Legal Standards**

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) ("*Greenholtz*"). In some instances, however, states may confer a liberty interest in parole under state law. *Id.* at 12. Section 3041(b) of the California Penal Code provides, in pertinent part:

> The panel or the board . . . shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current and past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

The Ninth Circuit has held that Section 3041(b) confers a constitutionally protected liberty interest in parole. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) ("*Irons*"); *Sass v.*

6

1    *Calif. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) ("*Sass*"); *Biggs v. Terhune*, 334

2    F.3d 910, 914-15 (9th Cir. 2003) ("*Biggs*").

3

4          Due process requires that there exist "some evidence" to support a parole decision.[6] *Irons*,

5    505 F.3d at 851 ("[a]t the time that Irons' state habeas petition [challenging a 2001 denial of

6    parole] was before the state courts, the Supreme Court had clearly established that a parole

7    board's decision deprives a prisoner of due process . . . if the board's decision is not supported by

8    'some evidence in the record.'"); *see also Sass*, 461 F.3d at 1128-29 ("some evidence" standard

9    is "clearly established in the parole context"); *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994);

10   *Perveler v. Estelle*, 974 F.2d 1132, 1134 (9th Cir. 1992); *Jancsek v. Oregon Bd. of Parole*, 833

11   F.2d 1389, 1390 (9th Cir. 1987) (citing *Superintendent, Mass. Correct. Inst'n, Walpole v. Hill*,

12   472 U.S. 445, 455 (1985)). "To determine whether the some evidence standard is met 'does not

13   require examination of the entire record, independent assessment of the credibility of witnesses,

14   or weighing of the evidence." *Sass*, 461 F.3d at 1128 (quoting *Superintendent v. Hill*, 472 U.S. at

15   455-56). The "some evidence" standard is "minimal," and "'the relevant question is whether

16   there is *any* evidence in the record that could support the conclusion reached by the [Board].'"

17   *Sass*, 461 F.3d at 1128 (quoting *Superintendent v. Hill*, 472 U.S. at 455-56 (emphasis added)).

18   Evidence that is "meager" or indirect still may support an agency decision under the "some

19   evidence" standard. *See Superintendent v. Hill*, 472 U.S. at 457.

20

21         State authorities' discretion in parole matters is "great" and "involves the deliberate

22   assessment of a wide variety of individualized factors on a case-by-case basis, and the striking of

23   _____

24       [6] As Magistrate Block stated in his Report and Recommendation, the Ninth Circuit has

25   repeatedly held that the "some evidence" standard is clearly established for purposes of the
     Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Nonetheless, Respondent

26   contends that no U.S. Supreme Court authority requires application of the some evidence
     standard to a parole decision. The Court rejects Respondent's contention because in the absence

27   of any contrary intervening Supreme Court decision, this Court is bound by the Ninth Circuit

28   authority stating that the "some evidence" standard is clearly established for AEDPA purposes.

a balance between the interests of the inmate and the public." *In re Powell*, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988) (internal quotations and citation omitted); *see also Biggs*, 334 F.3d at 915 (California law allows state authorities "to consider a myriad of factors when weighing the decision of granting or denying parole"); *Glauner v. Miller*, 184 F.3d 1053, 1055 (9th Cir. 1999) (state authorities have "broad discretion" to determine whether "the necessary [statutory] prerequisites are met") (quoting *Board of Pardons v. Allen*, 482 U.S. 369, 376 (1987)).

Under applicable state regulations, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the [Board] the prisoner will pose an unreasonable risk of danger to society if released from prison."[7] Cal. Code Regs., tit. 15, § 2281(a). In determining suitability for parole, the Board may consider, *inter alia*, "the circumstances of the prisoner's: social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release." *See* Cal. Code Regs., tit. 15, § 2281(b).

State prison regulations describe certain circumstances tending to show unsuitability for release, described as "general guidelines," but also indicate that the importance of any circumstances or combination of circumstances in a particular case is left to the judgment of the Board. Cal. Code Regs., tit. 15, § 2281(c). The regulations provide:

Circumstances tending to show unsuitability include:

---

[7] Since California Code of Regulations, Title 15 Section 2240, *et. seq.* applies only to murders committed on or after November 8, 1978, determination of Petitioner's parole suitability is governed by Section 2280, *et. seq.*

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs., tit. 15, § 2281(c).

Circumstances tending to show suitability for parole include: (1) the absence of a juvenile record; (2) a stable social history; (3) signs of remorse; (4) crime motivated by significant stress; (5) lack of criminal history; (6) prisoner's age; (7) realistic plans for release and development of marketable skills; (8) institutional activities indicating an enhanced ability to function within the law upon release. Cal. Code Regs., tit. 15, § 2281(d).

B.   **The San Francisco County Superior Court's Decision Upholding the Board's Denial of Parole Suitability Did Not Violate Due Process**

For the following reasons, the Court finds that the San Francisco County Superior Court's

9

1  decision was neither contrary to, nor an unreasonable application of, clearly established federal
2  law, as determined by the United States Supreme Court.[8]

3

4  At the time the California courts addressed Gzikowski's petition for habeas corpus, the
5  United States Supreme Court "had clearly established that a parole board's decision deprives a
6  prisoner of due process . . . if the board's decision is not supported by 'some evidence in the
7  record.'" *Irons*, 505 F.3d at 851 (citation omitted). When analyzing a state prisoner's petition for
8  habeas corpus based on a state parole board's denial of parole, a district court's "analysis is
9  framed by the statutes and regulations governing parole suitability determinations in the relevant
10  state." *Id.*

11

12  In this case, the Court "must look to California law to determine the findings that are
13  necessary to deem a prisoner unsuitable for parole, and then must review the record in order to
14  determine whether the state court decision holding that these findings were supported by 'some
15  evidence' . . . constituted an unreasonable application of the 'some evidence' standard . . ." *Irons*,
16  505 F.3d at 851 (citation omitted).

17

18  Under California law, an inmate "shall be found unsuitable for parole and denied parole
19  if, in the judgment of the [Board], the prisoner will pose an unreasonable risk of danger to society
20  if released from prison." Cal. Code Regs., tit. 15 § 2281(a).

21

22  _____

23  [8] As Magistrate Block stated in his Report and Recommendation, to the extent Petitioner challenges the denial of parole as a violation of the Eighth Amendment prohibition on Cruel and
24  Unusual Punishment, habeas relief is not warranted. The United States Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally
25  released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7. Since Petitioner has failed to cite any federal, including Supreme Court, authority holding that a denial of parole
26  or the continued confinement of a prisoner pursuant to a valid indeterminate life sentence can constitute cruel and unusual punishment in violation of the Eighth Amendment, Petitioner's
27  claim fails. *See Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008); *Carey v. Musladin*,
28  127 S. Ct. 649, 654 (2006); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004).

10

Here, the Board found that Petitioner would pose an unreasonable risk of danger to society if released from prison based on the commitment offense, trivial motive for the crime, prior criminal conduct, lack of parole plans, and failure to program recently. (Lodgment No. 1, 1-3-07 Transcript, 52-55.) The Board also noted Petitioner's bad attitude at the hearing, which it stated "demonstrates [the] kind of a propensity that could lead to violence . . ." *Id.* at 54-55.

At the time that the San Francisco County Superior Court reviewed the Board's decision, it was guided by California Supreme Court precedent, which held that "[w]hen the Board bases unsuitability on the circumstances of the commitment offense, it must cite 'some evidence' of aggravating facts *beyond the minimum elements of that offense.*" *In re Dannenberg*, 34 Cal. 4th 1061, 1091 (2005) (citing *In re Rosenkrantz*, 29 Cal. 4th 616, 658, 686 (2002)).

The San Francisco County Superior Court found that the Board's unsuitability finding was supported by "some evidence" of aggravating facts beyond the minimum elements of the offense. (Lodgment No. 2.) In doing so, the court focused on evidence showing that the offense was dispassionate and calculated, and the motive was trivial in relation to the offense. Specifically, the court found the following:

> First, Petitioner killed multiple victims. Petitioner shot three bullets into a car window and shot two men in the head, killing them both instantly. Second, there is evidence that Petitioner acted in a calculated and dispassionate manner when he shot both men. There is evidence that alludes to a prior encounter or altercation between Petitioner and the victims that night before the shooting took place. At the 2004 hearing, Petitioner discussed that after the first encounter with the victims he was afraid the victims would recognize his unique car, which could put him and his family in danger. Thus, it can be inferred that when Petitioner returned to find the victims on Market Street, he planned the attack in a calculated way and armed himself specifically for the purpose of killing both victims.
>
> Finally, the Board found the motive behind Petitioner's crime to be very trivial. Petitioner admitted that the committed offense occurred because of his anger, false pride, false ego, and his inability to control his impulses. The Board found that Petitioner killed two people because he felt disrespected by the victims. Petitioner also indicated that he acted out of fear for his family's safety. However, Petitioner admitted at the 2007

11

1    hearing, that the real motive was his inability to control himself.

2
3    (Lodgment No. 2, 9-10) (internal citations omitted).

4
5    Based on these findings, the San Francisco County Superior Court held that the Board's
6    decision as to the especially cruel, brutal, and heinous manner of the commitment offense and the
7    trivial motive for committing the offense was supported by "some evidence."

8
9    The San Francisco County Superior Court also rejected Petitioner's contention that the
10   Board's repeated denial of parole based on unchanging factors violated due process under Ninth
11   Circuit dicta in *Biggs* warning that continued reliance on unchanging factors to repeatedly deny
12   parole may violate due process because the Board's decision was not based solely on unchanging
13   factors, such as Petitioner's commitment offense. Specifically, the court found the following:

14
15       First, the board found that Petitioner's offense was carried out in a
         dispassionate and calculated manner, demonstrating a disregard for human
16       life. Second, the Board was concerned with Petitioner's failure to
         "program" from 2004 until 2007. Petitioner stated at the hearing that he
17       was "burnt out" from programming and participating in the self-help
         programs. This three year lapse in programming affected the Board's
18       decision. Third, the Board did not feel as though Petitioner had concrete
         enough parole plans because he did not have a residence or a job secured.
19       Fourth, the board also discussed the fact that Petitioner had a prior
         criminal record and failed to profit from society's previous attempts to
20       correct his criminality.

21   (Lodgment No. 2, 10.)

22
23   Based on these findings, the San Francisco County Superior Court held that while it
24   appeared that the Board's decision was based mainly on the commitment offense and Petitioner's
25   past conduct, the Board's decision was not based solely on those factors and thus rejected
26   Petitioner's contention based on *Biggs*.

27
28   After reviewing all relevant documents and authority, the Court finds that, based on the

12

1   law at the time, the San Francisco County Superior Court's decision holding that the Board's
2   findings were supported by "some evidence" was not an unreasonable application of the "some
3   evidence" standard.  Thus, the Court denies habeas relief based on such grounds.
4
5   **C.**      **The California Supreme Court's Decision in _In re Lawrence_**
6
7       Contrary to the Magistrate's Report and Recommendation, this Court does not read the
8   California Supreme Court's recent decision in _In re Lawrence_, 44 Cal.4th 1181 (2008)
9   ("_Lawrence_") as mandating a grant of habeas relief to Petitioner in this case.
10
11      The California Supreme Court issued its decision in _Lawrence_ on August 21, 2008, well
12  after the San Francisco County Superior Court denied Gzikowski's petition for habeas corpus.[9]
13  Thus, the Court cannot conclude that the San Francisco County Superior Court's decision was an
14  unreasonable application of the "some evidence" standard based on the California Supreme
15  Court's _subsequent_ decision in _Lawrence_. There is simply nothing in the _Lawrence_ decision
16  indicating that the California Supreme Court intended its decision to apply retroactively in
17  federal habeas cases, nor has the Ninth Circuit Court of Appeals mandated such application.[10] As
18  such, the Court cannot apply _Lawrence_ to this case.
19
20  _____
21      [9] In _Lawrence_, the court abandoned the minimum elements test and explained that the
22  "aggravated nature of a crime does not in and of itself provide some evidence of _current_
    dangerousness to the public unless the record also establishes that something in the prisoner's
23  pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that
    the implications regarding the prisoner's dangerousness that derive from his or her commission
24  of the commitment offense remain probative to the statutory determination of a continuing threat
25  to public safety." _In re Lawrence_, 44 Cal.4th at 1214.
26      [10] An en banc panel of the Ninth Circuit Court of Appeals is currently considering
27  application of the "some evidence" standard and the _Lawrence_ decision to California parole
    suitability determinations in federal habeas cases. _Hayward v. Marshall_, 512 F.3d 536 (9th Cir.),
28  _reh'g en banc granted_, 527 F.3d 797 (9th Cir. 2008).

                                          13

1

2      Moreover, even if the Court were to apply *Lawrence* to this case, the Court would still

3   deny habeas relief to Petitioner because the Board's decision was not based solely on the

4   commitment offense. Rather, as discussed above, the Board's decision was based on Petitioner's

5   lack of parole plans, failure to program recently, and Petitioner's criminal history. In addition, the

6   Board noted Petitioner's bad attitude at the hearing, which it believed demonstrated a propensity

7   that could lead to violence. Thus, the Court denies habeas relief based on such grounds.

8

9      **D.      Petitioner has not Shown that the Board's Alleged Bias Against Granting**

10             **Parole to Life-Sentenced Prisoners Violates Due Process**

11

12     As to Petitioner's contention that the Board is biased in that it has a practice of rarely

13   granting parole, as stated by Magistrate Block in his Report and Recommendation, Petitioner has

14   not cited, in his Petition or Reply, any U.S. Supreme Court authority supporting his contention.[11]

15   As a result, the Court rejects Petitioner's contention because in the absence of any U.S. Supreme

16   Court authority holding that a state parole board's practice of rarely granting parole constitutes a

17   violation of the United States Constitution's Due Process Clause, it cannot be said that the state

18   courts' rejection of this claim either was contrary to or involved an unreasonable application of

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ————————————————

28     [11] Even if Petitioner could point to such Supreme Court authority, he has failed to
     establish that the Board's decision was biased.

                                    14

clearly established Supreme Court law. *See Wright v. Van Patten*, 128 S. Ct. 743; *Carey v. Musladin*, 127 S. Ct. at 654; *Brewer v. Hall*, 378 F.3d at 955.

## V.    CONCLUSION

In light of the foregoing, the Court **DENIES** the Petition.

DATED: May 26, 2009

**R. GARY KLAUSNER**

**UNITED STATES DISTRICT JUDGE**

15